# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRY EDWARD DAUBERT,     ) | |
|     ) | |
|     Petitioner,     ) | |
|     ) | |
| vs.     ) | Case No. CIV-14-555-D |
|     ) | |
| WARDEN McCOLLUM,     ) | |
|     ) | |
|     Respondent.     ) | |

## REPORT AND RECOMMENDATION

Petitioner, appearing pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. United States District Court Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Respondent filed a response, Doc. 11, the jury-trial waiver transcript (TR Jury Trial Waiver), and the trial transcript (TR Nonjury Trial). Petitioner replied, Doc. 14, and moved for an evidentiary hearing. Doc. 15.[1] For the reasons set forth below, the undersigned recommends that the court deny habeas relief.

---

[1] Citations to the parties' pleadings and exhibits will refer to this Court's CM/ECF pagination.

## I.    Introduction.

After a non-jury trial in Pottawatomie County, Oklahoma, Case No. CF-2011-151, the state trial judge convicted Petitioner on two counts of shooting with intent to kill and ordered him to serve two concurrent fifteen-year sentences.  TR Nonjury Trial, at 137, 175.  Petitioner appealed, and the Oklahoma Court of Criminal Appeals (OCCA) affirmed his convictions.  Doc. 11, Ex. 3, at 1-3.[2]  Thereafter, Petitioner filed an application for post-conviction relief, *id.* Ex. 4, and the state trial court denied relief.  *Id.* Ex. 5. The OCCA affirmed the state court's ruling, *id.* Ex. 7, and Petitioner filed a supplemental application for post-conviction relief.  *Id.* Ex. 8.  The state court again denied relief, *id.* Ex. 9, and the OCCA affirmed on appeal.  *Id.* Ex. 11.

## II.    Petitioner's claims.

Petitioner raises five claims for relief.  In Grounds One and Two, Petitioner challenges the evidence's sufficiency.  Doc. 1, at 5-6.  In Ground Three, Petitioner alleges that his jury trial wavier was not knowingly and

---

[2]    The OCCA agreed with Petitioner that his Judgment and Sentence did not reflect that he was to serve his sentences concurrently and remanded Petitioner's case back to the trial court for entry of a Nunc Pro Tunc order. Doc. 11, Ex. 3, at 2-3.

intelligently entered. *Id.* at 8. Finally, in Grounds Four and Five, Petitioner alleges that his trial and appellate attorneys were ineffective. *Id.* at 10, 15.[3]

Respondent addresses Grounds One, Two, and Five on the merits, and argues that Petitioner's Grounds Three and Four are procedurally barred. Doc. 11, at 8-55. Because Petitioner blames appellate counsel (Ground Five) for failing to raise Grounds Three and Four on direct appeal, Doc. 1, at 8, 10, the undersigned elects to address Petitioner's claims in the following order: Grounds One and Two, Ground Five, and Grounds Three and Four.

―――――――――――――――――

[3] Petitioner did not file a brief with his petition. So, while Respondent provided the court with Petitioner's previous state court filings, Doc. 11, Exs. 1, 4, 6, 8, 10, the undersigned, with only one exception, *see infra* n.5, has not examined those briefs to find support or evidence for Petitioner's claims. *See United States v. Harris*, 579 F. App'x 657, 661-62 (10th Cir. 2014) ("In our view, a court ordinarily would be adopting . . . an advocate's role, were it to undertake a searching examination, akin to a scavenger hunt, of all of a pro se litigant's filings—including his evidentiary submissions—with the aim of weaving together a substantive argument for relief that the litigant never made in his motion or other pleading."); *Johnson v. Miller*, 387 F. App'x 832, 838 (10th Cir. 2010) (refusing to search the record to craft or support petitioner's arguments, and noting that while the court gives a pro se litigant's pleadings liberal construction, it "will not make . . . arguments for [petitioner]"). In his reply, Petitioner attempts to "incorporate" the "statement of facts" from his direct appeal brief. Doc. 14, at 2-4. But in this circuit, the court "strongly discourage[s] such conduct." *Jernigan v. Jaramillo*, 436 F. App'x 852, 856 (10th Cir. 2011) (noting that "this court has rejected petitioners' attempts to 'incorporate by reference' their previous filings").

## III. The trial evidence.

Petitioner's ex-wife, Dedra Mullen (Ms. D. Mullen), and her fiancé, Dathan Lane, drove to Petitioner's trailer home on March 29, 2011, to discuss Petitioner's child support payments. TR Nonjury Trial, at 9-13, 31-36. Ms. D. Mullen knocked on Petitioner's door, and she and Petitioner exchanged words. *Id.* at 11. Although Ms. D. Mullen described the discussion as "pretty calm," *id.*, Mr. Lane and Petitioner both described the encounter as heated. *Id.* at 34-35, 113-15. As Ms. D. Mullen was reentering her vehicle, Petitioner fired at least two rifle shots, hitting Mr. Lane in the chest and grazing Ms. D. Mullen in the back of her head. *Id.* at 14-15, 36-38. While the witnesses disagree as to whether Mr. Lane remained in the minivan during the entire encounter, they all agree that Mr. Lane was in the van at the time Petitioner fired the rifle. *Id.* at 13-14, 16-18, 35, 116, 121-22.

Petitioner's roommate, Mike Locke, testified that he heard a man's voice and felt someone shaking the trailer. *Id.* at 91-92. But Mr. Locke did not see Mr. Lane anywhere except in the van, nor did he witness Petitioner firing the weapon. *Id.* at 93-94, 97-98. When he asked Petitioner what he had done, Petitioner first responded: "Nothing. Don't worry about it." *Id.* at 94. Then, after "reality had set in," Petitioner stated: "I shot the SOB." *Id.* at 94. Petitioner then began crying, saying: "Oh, my God. What [did] I do to my kids?" *Id.* at 96.

4

District Attorney Investigator Brad Gaylord interviewed Petitioner later the same day. *Id.* at 70. Petitioner explained that Ms. D. Mullen had been harassing him about money, and twice stated that "she slammed the door on me and I lost it." State's Ex. 3, at 9:49-51; 10:35-36. When asked what exactly had happened, Petitioner said: "I guess I shot him, I don't know." *Id.* at 11:08-09. Petitioner could not remember how many times he had fired the weapon, *id.* at 11:18-20, 12:13, but when asked if he knew who he had been shooting at he replied, "that son of a bitch." *Id.* at 12:01-03. Petitioner did not think that he had shot at Ms. D. Mullen. *Id.* at 12:16-22. Petitioner explained that just after the shooting, he called his aunt, Wynema Kay Mullen (Ms. W. Mullen). Petitioner told Investigator Gaylord that he said to her: "I done just shot him, I think." *Id.* at 13:11-12. Ms. W. Mullen testified similarly. TR Nonjury Trial, at 89.

Investigator Gaylord asked Petitioner what his intent had been and Petitioner stated that: "I really wasn't thinking at the time," "I lost it." State's Ex. 3, at 23:56; 24:02. Finally, when asked if there was anything else he wanted to explain to the investigator, Petitioner said: "I don't know what else to say." *Id.* at 26:47.

At trial, Petitioner testified that Mr. Lane had a history of physically assaulting him and had threatened him with weapons. TR Nonjury Trial, at 99-101, 104-07. Petitioner explained that while Ms. D. Mullen was entering

the van, Mr. Lane yelled: "I'm going to kill you, motherfucker." *Id.* at 116.

According to Petitioner, Mr. Lane "was digging down in the floorboard. I

don't know if he was going for a gun or what. And he come up with his hands

still down, and that's when I shot." *Id.* at 122. Petitioner testified that: "I

thought he was going to shoot me or try to kill me. Because he was digging

on the floorboard for something, I thought he had a gun." *Id.* Petitioner did

not remember firing the weapon a second time. *Id.* at 123. Both Ms. D.

Mullen and Mr. Lane testified that they had no weapons in the minivan. *Id.*

at 14, 36-37.

## IV. Standard of review for habeas relief.

"When a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court adjudicated

the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86,

131 S. Ct. 770, 784-85 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088,

1096 (2013). A petitioner is entitled to federal habeas relief only if that

merits-based adjudication "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme

Court of the United States[.]" Antiterrorism and Effective Death Penalty Act

of 1996, 28 U.S.C. § 2254(d). This standard "reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice

system, not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786.

This Court first determines "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). Clearly established law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

## V. Analysis.

### A. Grounds One and Two: Petitioner's claims involving the evidence's sufficiency.

Petitioner alleges that the evidence was insufficient to support his convictions because the State failed to prove beyond a reasonable doubt that he: (1) was not acting in self-defense, and (2) had an intent to kill. Doc. 1, at 5-6. The OCCA rejected both arguments on direct appeal, Doc. 11, Ex. 3, at 2, and the undersigned finds that the decision was a reasonable application of federal law.

#### 1. Clearly established law.

The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson v. Virginia*. 443 U.S. 307, 324 (1979); *see Lott v. Trammell*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing that *Jackson* provided "the clearly established law applicable to [an insufficient evidence] claim"). Under this decision, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). *Jackson*'s standard for evidence sufficiency "must be applied with explicit

reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

### 2. The elements of shooting with intent to kill.

To convict Petitioner of shooting with intent to kill, the State had to prove that he: (1) intentionally, (2) shot another person with a firearm, (3) with the intent to kill any person. *See* Okla. Stat. tit. 21, § 652(A); Okla. Unif. Jury Instrs. (criminal) 4-4.

### 3. Petitioner's self-defense theory.

In Oklahoma, "self-defense" involves "an affirmative defense which admits the elements of the charge, but offers a legal justification for conduct that would otherwise be criminal." *Davis v. State*, 268 P.3d 86, 114 (Okla. Crim. App. 2011); *see also* Okla. Stat. tit. 21, § 733(2). When a defendant raises this defense, "the State [becomes] obligated to prove, beyond a reasonable doubt, that [the defendant] did not act in self-defense." *McHam v. State*, 126 P.3d 662, 667 (Okla. Crim. App. 2005).

To support his argument that he sufficiently proved self-defense, Petitioner relies on: (1) Mr. Locke's testimony that "the home . . . began to rock real hard that there was real hard banging on the door, and that Mr. Lane was yelling loud," and (2) his own testimony that he "knew Mr. Lane to have weapons, and Mr. Lane had threatened petitioner in the past with physical harm." Doc. 14, at 3. But, as outlined above, the State introduced

evidence that Petitioner repeatedly admitted to Investigator Gaylord that he fired the shots because he "lost it." *Supra* § III. In fact, when Investigator Gaylord asked Petitioner what he had intended when he fired the gun, Petitioner said he "wasn't thinking at the time" – not that Mr. Lane was reaching for a gun or that he was intending to save his own life. *See id.* Indeed, Petitioner never told Investigator Gaylord that he was acting in self-defense, even when given the opportunity to add more information. *See id.* Likewise, Petitioner did not tell either Ms. W. Mullen or Mr. Locke – the two people he spoke to right after the shooting – that he had been acting in self-defense or that he believed Mr. Lane had been reaching for a gun. *See id.* And, Mr. Locke admitted that he did not actually see Mr. Lane anywhere outside of the minivan and did not witness the shooting. *See id.* Finally, both Ms. D. Mullen and Mr. Lane testified that they had no weapons in the minivan, and neither side introduced any evidence that officers found a gun in the minivan. *See id.*

When reviewing this evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that

Petitioner was not acting in self-defense.[4]  So, the undersigned finds that the

OCCA reasonably applied federal law in rejecting Petitioner's claim on direct

appeal.

--------

[4]     Ordinarily the court is left to speculate regarding a jury's reasoning. But here, in announcing his verdict, the trial judge detailed his conclusions. First, he explained that he had no doubt that Mr. Lane and Petitioner had "hard feelings and acrimony" and had "no reason to disbelieve [Petitioner] when he says that Mr. Lane had threatened him in the past with physical harm and actually had physically assaulted him."  TR Nonjury Trial, at 135. But the trial judge noted that Petitioner had "never said anywhere that Mr. Lane had ever assaulted him with a weapon," and pointed out that Mr. Locke's testimony did not aid Petitioner because he had not seen Mr. Lane with a gun.  *Id.*   Indeed, the trial judge found Mr. Locke's testimony damaging to Petitioner, because Petitioner's response that "'Nothing happened.  Don't worry about it'" did not sound like "the response from a person who's fearing for his life."  *Id.*   Finally, the trial judge found it highly persuasive that Petitioner never told Investigator Gaylord that he had believed Mr. Lane had a gun, even when given the opportunity to explain the situation.  *Id.* at 136.   The judge explained, referring to Petitioner's police interview:

> He never said that Mr. Lane had a weapon.  He never said Mr. Lane was outside the truck.  He never said he was afraid of him. He never once said he was acting in self-defense.  All he said was – is he shot the son of a bitch and just because he lost it.
>
> There was never any threats – any testimony of any threats.   Several opportunities where the officer that was questioning him asked him to explain why and what his motivation was.  He didn't take advantage of it at that time to say, 'He had threatened my life' or that 'I was in fear of my life.' That was totally left out of that testimony.

#### 4. The intent to kill element.

In his petition, Petitioner generally challenges the State's proof that he intended to kill. Doc. 1, at 6. In his reply brief, Petitioner clarifies that because the evidence showed that he was shooting at Mr. Lane, there is "no proof of intent to kill" Ms. D. Mullen. Doc. 14, at 4. The undersigned finds no grounds for habeas relief in this claim.

"The intent required for an offense [of shooting with intent to kill] under § 652(A) can be shown by circumstantial evidence." *Rawlins v. Miller*, 346 F. App'x 360, 367 (10th Cir. 2009). Here, Petitioner repeatedly stated that he did not remember firing specifically at Ms. D. Mullen. *See supra* § III However, the evidence establishes that Ms. D. Mullen was the one that had been harassing Petitioner over money, and that it was her "slamming the door" that made Petitioner "los[e] it." *Id.* A rational trier of fact, construing this evidence in a light most favorable to the State, could find beyond a reasonable doubt that Petitioner intended to kill Ms. D. Mullen when he fired a second shot into the minivan in which she was sitting.

---

He also says in that statement that he doesn't – didn't have any idea what his intent was when he got the gun, which means that at the time, he was, again, not in fear of his life.

*Id.*

There is also sufficient evidence that Petitioner intended to kill Mr. Lane. Petitioner admits that the "rifle was pointed at Mr. Lane," Doc. 14, at 4, and he told Investigator Gaylord that he was shooting at "that son of a bitch." *Supra* § III. In Oklahoma, "[u]nder the doctrine of transferred intent[,] when one person acts with intent to harm another person, but because of a bad aim he instead harms a third person who he did not intend to harm, the law considers him just as guilty as if he had actually harmed the intended victim." *Short v. State*, 980 P.2d 1081, 1098 (Okla. Crim. App. 1999). Indeed, "'the plain language of [Okla. Stat. tit. 21, § 652] contemplates the doctrine of transferred intent apply'" in such circumstances, as it requires the State to prove only that Petitioner was intending to kill, with a firearm, *any person*. *Ballard v. Jordan*, No. 05-CV-210-JHP-PJC, 2009 WL 801849, at *5 (N.D. Okla. Mar. 25, 2009) (unpublished order) (citation omitted); *see also* Okla. Stat. tit. 21, § 652(A).

So, whether relying on circumstantial evidence or the doctrine of transferred intent, the undersigned cannot say that the OCCA unreasonably applied federal law when it found sufficient evidence to support Petitioner's conviction of shooting Ms. D. Mullen with intent to kill.

### 5. Summary.

Based on the foregoing, the undersigned finds that the OCCA reasonably applied federal law when it found sufficient evidence both that

Petitioner was not acting in self-defense and that he intended to shoot with intent to kill.  So, the court should deny habeas relief on Grounds One and Two.

**B.    Ground Five:    Petitioner's claim involving appellate counsel's alleged ineffectiveness.**

In Ground Five, Petitioner alleges that his appellate counsel was constitutionally ineffective for failing to challenge his jury trial waiver (Ground Three) and trial counsel's ineffectiveness (Ground Four).  Doc. 1, at 15.

### 1.    Clearly established law.

Under clearly established law, Petitioner must demonstrate that his appellate attorney's performance was deficient and prejudicial.  *See Strickland v. Washington*, 466 U.S. 690-91 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that "the proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*").  "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the [direct appeal] would have been different." *Strickland*, 466 U.S. at 694.

The undersigned finds that Petitioner's ineffective assistance of appellate counsel claims do not warrant habeas relief.

### 2. Habeas relief denial based on the OCCA's ruling on post-conviction.

This Court has repeatedly held that when the OCCA addresses an ineffective assistance of appellate counsel claim on the merits, and "conclude[s], in essence, that it would not have reached a different outcome had the appellate counsel raised the omitted claims on direct appeal, the [c]ourt can already be assured that appellate counsel's conduct was not prejudicial [under *Strickland*]." *Jackson v. Martin*, No. CIV-12-702-W, 2013 WL 5656105, at *1, 4 (W.D. Okla. Oct. 15, 2013) (unpublished order) (collecting this Court's cases holding that a petitioner cannot establish appellate counsel's ineffectiveness where the OCCA has announced already that "the outcome of the state appeal would not have changed had appellate counsel raised the relevant claim" (citation omitted)), *certificate of appealability denied*, 572 F. App'x 597 (10th Cir. 2014). Based on this, the undersigned recommends that the court deny Petitioner's habeas claims involving ineffective assistance of appellate counsel.

### 3. Habeas relief denial based on deference to the OCCA's *Strickland* application.

The undersigned also finds that the OCCA reasonably applied *Strickland* in rejecting Petitioner's appellate counsel claims.

Petitioner raised ineffective assistance of appellate counsel in his first application for post-conviction, and, citing *Strickland*, the OCCA held that

Petitioner "fails to show how the result in his appeal would have been different but for appellate counsel's alleged errors." Doc. 11, Ex. 7, at 4-5. Because the OCCA applied *Strickland*'s prejudicial standard, this Court must give its finding deference. *See Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir. 2003) (holding that whether to give deference to the OCCA's findings on an appellate counsel claim "will depend upon a case-specific determination of whether the OCCA followed established *Strickland* standards"); *see also Parson v. Keith*, 310 F. App'x 271, 273-74 (10th Cir. 2009) (finding that where the OCCA applied *Strickland* to hold that appellate counsel's alleged errors would not have affected the direct appeal's outcome, the court must "defer to the OCCA's determination").

### a. Appellate counsel's failure to challenge Petitioner's jury trial waiver.

Petitioner waived his right to jury trial. TR Jury Trial Waiver, at 2-4. Petitioner claims that his appellate counsel should have argued on direct appeal that his waiver was not "knowingly and intelligently" entered. Doc. 1, at 8. The undersigned finds that the OCCA reasonably applied *Strickland* when it found no prejudice.

Petitioner argues that his waiver was not knowing and intelligent because he "did not understand [that he] was waiving jury trial without option to plead guilty." *Id.* But as both the trial court and the OCCA held,

Petitioner "maintained his right to change his plea of not guilty up to the Court rendering its verdict at the conclusion of the trial." Doc. 11, Ex. 5, at 2; *see also* Ex. 7, at 3-4.  Because Petitioner did *not* give up his option to enter a guilty plea, there is not a reasonable likelihood that the outcome of his direct appeal would have been different had his appellate attorney raised this argument on appeal.

### b. Appellate counsel's failure to challenge trial counsel's alleged ineffectiveness.

Petitioner also argues that appellate counsel should have challenged trial counsel's conduct.  That is, Petitioner believes that his trial counsel was ineffective for failing to:  (1) inform Petitioner of a "ten year plea bargain offer until day set for trial"; (2) advise Petitioner to "seek the ten years"; and (3) present a theory that Petitioner's gun misfired.  Doc. 1, at 10.  For these claims, appellate counsel would have had to show on direct appeal that trial counsel's conduct was constitutionally deficient and prejudicial under the *Strickland* standard.  *Duckett v. Mullin*, 306 F.3d 982, 996 (10th Cir. 2002) ("In order to succeed on his claim that appellate counsel was ineffective [for failing to raise a claim of ineffective assistance of trial counsel, Petitioner] must first demonstrate that he would have been entitled under *Strickland v. Washington*, . . . to relief for the ineffectiveness of trial counsel.").

### i.    The alleged ten-year plea offer.

Central to Petitioner's first two claims is his theory that the State made a ten-year plea bargain offer the day of trial.  However, the State denies that it ever made such an offer, Doc. 11, Ex. 13, at 3, 7, and the trial court made a factual finding that:  "There is no credible evidence before the Court that the Defendant was ever offered a ten-year sentence in return for a change of plea from not guilty to guilty[.]"  *Id.* Ex. 5, at 2.  The OCCA affirmed this finding, *id.* Ex. 7, and the state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence.  *Hooks*, 689 F.3d at 1164.

Petitioner has not presented this Court with clear and convincing evidence that the State offered him a ten-year plea bargain.[5]  So, presuming

---

[5]    In an *abundance* of caution, and because Petitioner requested an evidentiary hearing and specifically referenced these two documents, Doc. 15, at 2, the undersigned has reviewed two affidavits Petitioner submitted to the state court on this issue.  In both documents, the affiant states that Petitioner's attorney mentioned a ten-year offer he was negotiating with the State.  Doc. 11, Ex. 8 at 13, 14.  According to the affiants however, trial counsel later explained that while negotiating with "D.A. Smothermon," "A.D.A. Coc[hran]" came in and said that he did not "like the offer" and was later that same day assigned to Petitioner's case.  *Id.*  Notably, it was Mr. Cochran that denied having ever made an offer to Petitioner.  Doc. 11, Ex. 13. So, rather than providing clear and convincing evidence that the State *did* make a ten-year plea bargain offer which Petitioner's attorney failed to inform him about until the day of trial and/or failed to encourage him to take, this evidence supports the trial court's factual finding that the State never offered the ten-year plea bargain.

that fact's correctness, the undersigned finds no reasonable likelihood that Petitioner would have prevailed on direct appeal had appellate counsel challenged trial counsel's alleged failure to inform him of such a deal or encourage him to take the plea offer.

### ii. Trial counsel's failure to press a theory that Petitioner's gun misfired.

Finally, Petitioner alleges that trial counsel was ineffective for not asserting a theory that his gun misfired, and that appellate counsel failed to raise this claim on direct appeal. Doc. 1, at 10. The undersigned finds that the OCCA reasonably applied *Strickland* when it found that appellate counsel's conduct was not prejudicial.

Both here and at trial, Petitioner has emphatically asserted that he acted in self-defense. As discussed above, a defendant pleading self-defense in Oklahoma is admitting to the underlying conduct but claiming legal justification to do so. *See supra* § V(A)(3). In other words, Petitioner's theory at trial (and in the present action) was that he: (1) intentionally; (2) shot another person with a firearm; (3) with the intent to kill any person – but with legal justification. *Id.* This theory is entirely inconsistent with an argument that Petitioner's gun accidentally misfired. So, Petitioner cannot show that trial counsel was constitutionally ineffective for failing to raise two, inconsistent theories at trial. *See Jackson v. Shanks*, 143 F.3d 1313, 1320

(10th Cir. 1998) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance."). Because trial counsel was not constitutionally ineffective, the OCCA reasonably applied *Strickland* when it held that appellate counsel's failure to raise this claim on direct appeal was not prejudicial.

### 4. Summary.

The OCCA has already announced in a post-conviction ruling that the direct appeal's results would not have been different even if appellate counsel had raised Grounds Three and Four, and reasonably applied *Strickland* when it did so. For both reasons, the court should find that Petitioner's claims of ineffective assistance of appellate counsel are meritless.

### C. Grounds Three and Four: Petitioner's claims involving his jury trial waiver and trial counsel's ineffectiveness.

In Grounds Three and Four, Petitioner alleges that his jury trial wavier was not knowingly and intelligently entered and that trial counsel was ineffective. Doc. 1, at 8-10. Respondent argues that both claims are procedurally barred, Doc. 11, at 26-36, and the undersigned agrees.

### 1. The law of procedural bar.

A habeas claim is generally subject to procedural bar when the OCCA declines to consider a claim's merits based on a state procedural rule that is independent and adequate. *See Coleman v. Thompson*, 501 U.S. 722, 750

(1991). "'To be independent, the procedural ground must be based solely on state law.'" *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (citation omitted). "'To be adequate, the procedural ground must be strictly or regularly followed and applied evenhandedly to all similar claims.'" *Id.* (citation omitted). If the rule is independent and adequate, a petitioner must show either cause and prejudice, or a fundamental miscarriage of justice, to overcome the default. *See Coleman*, 501 U.S. at 750.

### 2. Plaintiff's procedural bar.

Petitioner did not raise his claims involving the jury trial waiver or trial counsel's ineffectiveness on direct appeal. Doc. 11, Ex. 1. He did in his first application for post-conviction relief, *id.* at Ex. 4, but the OCCA held that Petitioner's claims were "barred as res judicata" and thus "waived." *Id.* at Ex. 7, at 1, 3.

### a. The rule's independence.

It is well established that the OCCA's waiver rule is based on Oklahoma state law and is "considered 'independent' for purposes of federal habeas review." *Cole*, 755 F.3d at 1159.

### b. The rule's adequacy.

The waiver rule's adequacy depends on the allegation. For claims not involving ineffective assistance of trial counsel, the Tenth Circuit has "repeatedly held that Oklahoma's [waiver rule] meets the adequacy

21

requirement." *Banks v. Workman*, 692 F.3d 1133, 1145 (10th Cir. 2012). So, the OCCA's holding that Petitioner had waived his jury trial waiver argument was based on an independent and adequate procedural rule.

Petitioner's ineffective trial counsel claim is more complicated. For this argument, Oklahoma's waiver rule is only adequate if: (1) Petitioner's counsel at trial and on direct appeal were different, and (2) the ineffective assistance of trial counsel claim could have been resolved on the trial record alone. *See Cole*, 755 F.3d at 1159. As to the first element, Petitioner notes that he had different counsel at trial and on direct appeal. Doc. 1, at 12. And, Petitioner's argument that trial counsel did not present a theory that his gun had misfired could have been resolved on the trial record alone. So, the OCCA finding that Petitioner waived this argument is based on an independent and adequate procedural rule.

Arguably, Petitioner's claim that trial counsel did not inform him of a ten-year plea bargain offer until the day of trial, or advise him to seek a ten-year plea bargain, could not have been resolved on the trial record alone as no evidence of such an offer exists in the record. *See supra* § V(B)(3)(b)(i). However, in the state appellate court, Petitioner could have requested an evidentiary hearing on this issue which would have "allowed him to supplement the record on appeal with the additional evidence relevant to [the] claim." *Cole*, 755 F.3d at 1159. Petitioner does not challenge the

OCCA's method for supplementing the facts on appeal, and the undersigned finds that the OCCA's waiver rule is therefore adequate on this claim. *See id.*; *see also DeLozier v. Sirmons*, 531 F.3d 1306, 1330 (10th Cir. 2008) (noting that "the Oklahoma procedural-bar rule is adequate even when the claim of trial-counsel ineffectiveness cannot be resolved on the trial record alone, so long as the State provides a procedural mechanism to supplement the record," citing OCCA Rule 3.11 as providing for such supplementation).

### c.   Summary.

In sum, because the OCCA's waiver rule was independently and adequately applied to Petitioner, the court should not address Grounds Three and Four on the merits unless Petitioner shows either:   (1) cause and prejudice, or (2) a fundamental miscarriage of justice.

### 3.   Cause and prejudice.

A petitioner may overcome a procedural bar if he can "demonstrate cause for the default and actual prejudice[.]"   *Coleman*, 501 U.S. at 750. Petitioner alleges that his appellate counsel caused the procedural bar for failing to raise his claims on direct appeal.  Doc. 1, at 8, 10, 15.  "'Because the same legal standards govern petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, [the court] must determine whether petitioner has shown cause concurrently with the merits of his ineffective assistance of

counsel claim.'" *Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999) (citation omitted). The undersigned has already concluded that Petitioner's habeas claims involving his appellate attorney lack merit. *See supra* § V(B). So, the same claims cannot constitute cause and prejudice for purposes of overcoming the procedural bar in state court. *See Sherrill*, 184 F.3d at 1176 (finding that petitioner's appellate attorney was not ineffective under *Strickland*, and then holding: "Petitioner's ineffective assistance of appellate counsel claim therefore has no merit and cannot constitute 'cause' for his procedural default in state court.").

### 4. Fundamental miscarriage of justice.

Petitioner can also overcome the procedural bar if he shows a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. But to do so, Petitioner must make a "'credible' showing of actual innocence." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). That is, he must "'support his allegations of constitutional error with new reliable evidence − whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence − that was not presented at trial.'" *Id.* at 1232 (citation omitted).

Petitioner continues to assert that he acted in self-defense, stating that: "I shot a much larger man who had battered and threatened me on a number of occasions and who had just stated he was going to kill me before seeming to

reach for a gun." Doc. 1, at 5. Self-defense constitutes legal innocence, not factual innocence, and thus cannot support a claim of actual innocence under the fundamental miscarriage of justice standard. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 n.1 (10th Cir. 2002) (rejecting petitioner's fundamental miscarriage of justice claim because: "[Petitioner] does not claim that new evidence shows he is factually innocent of shooting [the victims]. Rather, his claim boils down to asserting that he is *legally* innocent because his conduct is justified . . . by the doctrine[] of self-defense . . . . The miscarriage of justice exception, however, only applies to claims of factual innocence.").

### 5. Summary.

Because Petitioner does not show either cause and prejudice or a fundamental miscarriage of justice, the court should find that Petitioner's Grounds Three and Four are procedurally barred and should deny them as such.

## VI. Recommended ruling and notice of right to object.

For the reasons discussed above, the undersigned recommends that the court deny the petition for habeas relief. Grounds One, Two and Five lack merit, and Grounds Three and Four are procedurally barred.

Adoption of this recommendation will moot Petitioner's motion for an evidentiary hearing. Doc. 15. The Supreme Court has recently clarified that "evidence introduced in federal court has no bearing on a § 2254(d)(1) review."

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011). So, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* The OCCA adjudicated Petitioner's Grounds One, Two and Five on the merits, and this Court's review is thus limited to determining whether the state court's adjudication was reasonable under § 2254(d)(1). As illustrated above, Petitioner has not overcome § 2254(d)(1)'s deference, and the court need not hold an evidentiary hearing. *See Sanchez v. Wyoming*, 577 F. App'x 883, 885 (10th Cir. 2014) (rejecting petitioner's claim that the district court improperly denied him an evidentiary hearing on his habeas petition, holding that: "[T]he court appropriately limited its review to the record that was before the Wyoming Supreme Court. And having found that § 2254(d) barred a grant of habeas relief, the district court also did not err in denying [petitioner] an evidentiary hearing under § 2254(e)(2)."). And, because the OCCA's merits-based decision on Petitioner's ineffective assistance of appellate counsel claim (Ground Five) effectively prohibits review of Petitioner's procedurally barred claims (Grounds Three and Four), the court need not conduct an evidentiary hearing relating to those claims. *See Thacker v. Workman*, 678 F.3d 820, 836 (10th Cir. 2012) ("Because, however, [petitioner's] claim is procedurally barred, the district court did not err in failing to conduct an evidentiary hearing."); *see also Pavatt v.*

*Trammell*, CIV-08-470-R, 2014 WL 1745019, at *57 (W.D. Okla. May 1, 2014) (unpublished order) ("Because the Court has procedurally barred these claims due to Petitioner's failure to present them to the OCCA until his second post-conviction application, an evidentiary hearing on these claims is clearly unwarranted.").

The undersigned advises the parties of their right to object to this report and recommendation by March 17, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

Entered this 25th day of February, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE